JOURNAL ENTRY AND OPINION
Defendant-appellant, Timothy O'Linn, appeals his conviction and sentence in the Cuyahoga County Common Pleas Court of two counts of aggravated vehicular assault while under the influence of alcohol. Appellant contends that the trial court erred in denying his motion to suppress, allowing a police officer to testify as an expert in accident reconstruction and imposing its sentence. Appellant also contends that his convictions are against the weight and sufficiency of the evidence and that his trial counsel was ineffective. For the reasons set forth below, we affirm appellant's conviction but modify his sentence in part and vacate in part.
The record reflects that on March 26, 1998, the Cuyahoga County Grand Jury indicted appellant on two counts of aggravated vehicular assault, in violation of R.C. 2903.08(A), each with a driving under the influence of alcohol specification, in violation of R.C. 2903.08(D). The charges arose out of an automobile accident that occurred on August 2, 1997 in the westbound lanes of I-90 in Rocky River, Ohio.
On June 23, 1998, appellant filed a motion to suppress statements made while he was in the emergency room of Fairview Hospital following the accident.
On December 8, 1998, the trial court held a hearing regarding appellant's motion to suppress. City of Rocky River Police Officer Ronald Flowers testified that on August 2, 1997, at approximately 7:00 p.m., he responded to a report of an automobile accident on I-90 westbound. Upon arriving at the scene of the accident, he observed an extensively-damaged brown Ford LTD overturned on the left side of the roadway. Appellant, the driver of the Ford LTD, was lying on the road outside his car, being tended to by several motorists who had stopped to assist him. Flowers also observed a red Corolla overturned in the grassy area off the right side of the roadway. The driver of the Corolla was outside of the car; a passenger was trapped inside the vehicle. Appellant was subsequently transported to Fairview Hospital and the occupants of the Corolla were transported to Lakewood Hospital.
Officer Flowers and other responding officers took photographs of the accident scene and measurements of the skid marks left by the two vehicles. Flowers testified that he also photographed and measured the marks on the median wall made by the LTD when it hit the median wall several times.
At approximately 8:30 p.m., after clearing the accident scene, Flowers went to Fairview Hospital to determine the identity of the driver of the LTD and further investigate the accident. Flowers testified that appellant was on a gurney in the emergency room when he spoke with him. Flowers told appellant that there could be charges stemming from the accident and informed him of his Miranda rights. According to Flowers, appellant nodded that he understood his rights and agreed to speak with Flowers.
Appellant told Flowers that he was westbound on I-90 when he observed a red car in front of him that was traveling much slower than his car. Appellant stated that he tried to go around the car, but did not have enough room to do so. He collided with the car, sending both cars skidding off the roadway.
Flowers testified that he could smell a strong odor of alcohol on appellant's breath and appellant's speech was somewhat slurred. When Flowers asked appellant if he had had anything to drink that day, appellant told him that he had been doing construction work on a house earlier in the day and had drunk approximately three beers.
Flowers then obtained information from appellant regarding his name, date of birth, and make and model of the car involved in the accident. Flowers testified that appellant appeared to fully understand the questions that were asked of him by both Flowers and the medical personnel in the emergency room who were attending to him. According to Flowers, appellant did not appear to be in such excruciating pain that he was unable to communicate.
Flowers testified that he returned to Fairview Hospital on August 3, 1997 to obtain further information about the accident from appellant. Appellant had just returned from surgery, however, and was very groggy and uncommunicative. Accordingly, Flowers left a blank form for appellant to complete with his written statement of how the accident occurred. The form was returned several days later to the Rocky River Police Department.
Appellant's written version of the accident differed from the version he told Flowers in the emergency room. Appellant's written statement averred: "I was driving in the second lane from the left following a large truck about 50 to 100 ft. away. All of a sudden a red car came around the right of me and cut in front — clipping the right front of my car. I tried to veer to the left to avoid crashing into the car but her left rear caught with my right front."
The trial court denied appellant's motion to suppress the statements made by appellant to Officer Flowers in the emergency room.
The state called six witnesses at trial. David R. Mustin testified that he and his wife were driving westbound on I-90 on August 2, 1997 around dinnertime. According to Mustin, around the McKinley or Hilliard Road exits, a dark-colored car traveling at eighty-five to ninety miles per hour passed them on their left. Thirty to sixty seconds later, Mustin observed large clouds of dust on both sides of the road and then saw that two cars had spun off the road and flipped over. Mustin testified that he called 911 to report the accident and then he and his wife got out of their car to help.
Fahima Assad testified that on August 2, 1997, her daughter, Awatef, picked her up at the family-owned bakery to give her a ride home. According to Assad, as they were traveling westbound on I-90 in Awatef's red Toyota Corolla, "somebody hit my daughter in the car in the back." Assad testified that she passed out for a minute and then regained consciousness. Assad was taken to Lakewood Hospital, where she received fifty stitches to her head and treatment for injuries to her leg, feet, back and neck. She stayed in the hospital for two days after the accident.
Awatef Assad testified that at approximately 5:30 p.m. on August 2, 1997, she picked her mother up from Assad Bakery to give her a ride home. Awatef testified that she was traveling at fifty-five to sixty miles per hour in the far right-hand lane, approximately one-half mile from the Clague Road exit, where she intended to exit the highway. According to Awatef, she glanced in her rear-view mirror and saw "a brown mid-sized vehicle just on me and then he just hit me, rear-ended the back of my vehicle at a high rate of speed." Awatef testified that there was a "really huge hard impact." Awatef testified that she does not remember what happened after the impact because she lost consciousness. When she woke up, she got out of her car, which was overturned, and walked around to the passenger side of the car to speak with her mother, who was trapped in the car and drifting in and out of consciousness.
Awatef testified that she and her mother were transported to Lakewood Hospital, where she spent the night. Awatef testified that she received stitches on her lips and was treated for a broken nose. According to Awatef, she could not work for two weeks after the accident and now has a herniated disc in her neck and back as a result of the accident.
At the hospital, shortly after the accident, Awatef gave a statement about the accident to Officer Flowers. Awatef stated: "I was traveling on I-90 westbound on the right hand lane, I looked in my rear-view mirror and saw a brown car behind me. It seemed to be intentionally trying to crash into me. He hit me from behind, caused me to swerve off the berm, causing my car to roll over." Awatef identified appellant's car, pictured in State's Exhibits 14, 15 and 16, as the car that hit her.
Matthew E. Matlak testified that he was driving eastbound on I-90 on August 2, 1997 when he saw smoke. He pulled over to the side of the road and saw a brown Ford LTD flipped over near the side of the road. Matlak and a passenger in his car pulled appellant out of his car and propped his head up. Matlak testified that appellant had a strong odor of alcohol on his breath and his eyes were glassy.
Sergeant Kelly Stillman testified that he was dispatched to the scene of the accident on August 2, 1997. Stillman testified that upon arriving at the scene, he called for two rescue squads to assist with the victims. According to Stillman, when he went into the ambulance to check on appellant's condition, he immediately detected the odor of alcohol on appellant's breath and observed that his eyes were glassy and his speech was slurred.
Officer Ronald Flowers testified that he had been a police officer for the City of Rocky River for seven years and had responded to several hundred motor vehicle accidents. Flowers testified that he had completed the basic, thirteen-week police academy course and eighty hours of accident investigation classes conducted by the State Highway Patrol Department. Flowers testified that he had also completed several classes in law enforcement at Cuyahoga Community College.
Flowers testified that he investigated the accident scene, took photographs and measurements at the scene and prepared a diagram of the accident scene. The diagram, admitted as State's Exhibit 32, illustrated the initial point of impact of the two cars, the skid marks made by each car and the three places where appellant's car hit the median wall before it came to rest on the side of the road.
Over defense counsel's objection, the trial court qualified Flowers as an expert "for purposes of deciphering and explaining the schematic drawings that he drew in connection with the incident."
Flowers explained that his diagram indicated that the skid marks from the Toyota Corolla began in the middle of the far right lane. Based on their distance and direction, Flowers concluded that the Corolla was sent out of control first from the right lane. Flowers testified further that the diagram indicated that the skid marks from appellant's car began in the center lane, very close to the edge line of the right hand lane, but further up the roadway than the skid marks left by the Corolla. Therefore, Flowers explained, the location, arch, and direction of the skid marks from appellant's car indicated that appellant's car was sent out of control after the Corolla.
Flowers testified that he went to the impound lot on August 3, 1997 and took photographs of both cars involved in the accident. Flowers testified that State's Exhibit 26 illustrates damage to appellant's car that is consistent with a rear-end collision. He further testified that State's Exhibits 20 through 24 indicate that red paint was transferred from the Corolla to the left front side of appellant's car.
Flowers testified that appellant's written statement was inconsistent with his (Flowers') observations of the accident scene and his drawing of the scene:
 Based on the skid mark evidence, based on the vehicle damage, and the paint transfer, the crucial damage to the vehicles, it would indicate that the red car was struck from behind by the brown LTD. The LTD caused the red car to careen off the roadway into the grassy area overturning, subsequently causing the brown car to go out of control, collide with the concrete median wall, travel down the road striking the wall other times, rolling over on to its roof and subsequently coming [to] a stop.
Finally, Flowers testified that he subsequently requested appellant's hospital records from Fairview Hospital. The records indicated that appellant's blood alcohol concentration at 7:42 p.m. on August 2, 1997 was .171, 1.7 times the legal limit.
On cross-examination, Flowers testified that one inch on his diagram equaled approximately thirty feet but admitted that his drawing of the accident scene was not drawn to exact scale. Flowers also testified that both drivers reported to him that they were going approximately sixty miles per hour, but he admitted that he did not calculate the speed of each car based on their respective skid marks.
Appellant timely appealed, raising six assignments of error for our review.
 I. TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS STATEMENTS.
In his first assignment of error, appellant asserts that the trial court erred in denying his motion to suppress the statement he made to Officer Flowers in the emergency room at Fairview Hospital shortly after the accident. Appellant concedes that Officer Flowers informed him of his Miranda rights prior to questioning him but contends that he could not give a voluntary, informed consent to a waiver of his Miranda rights while he was receiving medical treatment for his injuries.
The standard for review of a trial court's ruling on a motion to suppress has been set forth in a number of cases. Because the trial court is in the best position to assess credibility and resolve issues of fact, we must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Retherford (1994), 93 Ohio App.3d 586, 592. Then, accepting these facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
 Miranda warnings are a necessary prerequisite if a statement made by an accused during custodial interrogation is to be admissible into evidence. Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Miranda v. Arizona
(1966), 384 U.S. 436, 444.
Assuming, without deciding, that appellant's statement to Officer Flowers was made during a custodial interrogation, we must determine whether appellant's statement was voluntary. The test of whether a statement was voluntarily made rests upon the determination of whether the totality of the circumstances demonstrates that the statements are of the accused's free and rational choice. Greenwalk v. Wisconsin (1968), 390 U.S. 519;State v. Jenkins (1984), 15 Ohio St.3d 164.
At the hearing on appellant's motion to suppress, Officer Flowers testified that appellant appeared to fully understand the questions that were asked of him by both Flowers and the medical personnel that were tending to appellant. He testified further that appellant did not appear to be in such excruciating pain that he could not properly communicate and that appellant properly answered his questions regarding his name, birth date, and the make and model of his car. Finally, he testified that appellant nodded his assent that he understood his rights and would talk to Flowers.
Although appellant now contends that he could not give a knowing, intelligent and voluntary waiver of his Miranda rights while he was being treated in the emergency room for his injuries, appellant produced no evidence at the suppression hearing that his statement was not made voluntarily. Moreover, there was no evidence that appellant was in such excruciating pain from his injuries that he was incoherent or unable to make an intelligent decision regarding whether to speak with Officer Flowers.
In light of the unrefuted evidence adduced at the suppression hearing, we agree with the trial court that appellant's statement was voluntary. Appellant's first assignment of error is therefore overruled.
 II. TRIAL COURT ERRED IN ALLOWING OFFICER FLOWERS TO GIVE HIS OPINION AS AN EXPERT IN ACCIDENT RECONSTRUCTION.
In his second assignment of error, appellant contends that the trial court erred in allowing Officer Flowers to testify as an expert in accident reconstruction.
Evid.R. 702 states:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
Thus, pursuant to this rule, a witness may testify as an expert if the following three conditions are met: 1) he or she is qualified as an expert by virtue of specialized knowledge, skill, experience, training or education regarding the subject matter of the testimony; 2) the testimony relates to matters beyond the knowledge or experience of lay persons or dispels a common misconception among lay persons; and 3) the testimony is based upon reliable scientific, technical or other specialized information. Nichols v. Hanzel (1996), 110 Ohio App.3d 591, 597.
Pursuant to Evid R. 104(A), the trial court must make a threshold determination regarding the qualifications of the witness to testify as an expert witness before it permits expert testimony. Scott v. Yates (1994), 71 Ohio St.3d 219, 221. The decision regarding the admissibility of expert opinions rests within the sound discretion of the trial judge and will not be reversed on appeal unless there is a clear showing that the trial court abused its discretion. Id.
Appellant contends that Officer Flowers "reconstructed" the accident for the jury when he explained that "the LTD caused the red car to careen off the roadway into the grassy area overturning, subsequently causing the brown car to go out of control." Appellant contends that although Flowers was qualified by the trial court as an expert to explain how he constructed the diagram of the scene and presided over the taking of measurements and photographs, he was not qualified by his education or experience to give his opinion regarding the cause of the accident. We agree.
The testimony offered by Officer Flowers regarding the cause of the accident was inadmissible because Flowers was not qualified to give an opinion as an accident reconstruction expert. Although Officer Flowers testified that he had two weeks of training in accident investigation, there was no evidence presented to establish that Flowers had any training or experience in accidentreconstruction. Based upon a thorough review of the record, we find that Officer Flowers was not qualified to give opinion testimony regarding causation. Accordingly, the trial court abused its discretion in admitting his testimony regarding the cause of the accident. See, e.g., Scott v. Yates (1994), 71 Ohio St.3d 219; Hoso v. Henninger (Sept. 12, 1990), Mahoning App. No. 89 C.A. 149.
Error in the admission of evidence is not grounds for reversal, however, unless substantial rights of the complaining party were affected or it appears that substantial justice was not done.O'Brien v. Angley (1980), 63 Ohio St.2d 159. 164. In determining whether a substantial right of a party has been affected, a reviewing court must decide whether the trier of fact would have probably reached the same conclusion had the error not occurred.Id. at 164-165, citing Hallworth v. Republic Steel Corp. (1950),153 Ohio St. 349; Kish v. Withers (1997), 123 Ohio App.3d 132,137.
Here, there was substantial, competent, credible evidence from which the jury could have concluded, without Officer Flowers' testimony about the cause of the accident, that appellant's reckless behavior caused the accident. David Mustin testified that thirty to sixty seconds before the crash, he observed a dark-colored car traveling at eighty-five to ninety miles per hour pass him on his left. Awatef Assad testified that she was traveling at the lawful speed in the right-hand lane when a "brown mid-sized * * * vehicle rear-ended the back of my vehicle at a high rate of speed." Awatef identified appellant's car — a brown Ford LTD — as the car that hit her. Moreover, Officer Flowers testified that based upon his diagram of the accident and his observations at the scene, appellant's written version of the accident — that the red Toyota Corolla cut in front of him, clipping the front of his car was inconsistent with what actually happened.
Thus, based upon our review of the record, we find that the jury would have likely convicted appellant even if Officer Flowers' testimony regarding the cause of the accident had not been admitted. We hold, therefore, that the error was harmless.
Appellant's second assignment of error is overruled.
III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
In his third assignment of error, appellant contends that he was denied effective assistance of counsel.
To warrant reversal on the grounds that he was not provided effective assistance of counsel, appellant must meet the two-pronged test set forth in Strickland v. Washington (1984),466 U.S. 668:
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showing, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable. See, also, State v. Lytle
(1976), 48 Ohio St.2d 391, 396-397 (adopting virtually the same test for Ohio).
To determine whether counsel's performance was deficient, the court must inquire whether the attorney provided reasonably effective assistance, considering all the circumstances. State v.Loza (1994), 71 Ohio St.3d 61, 83, citing Strickland. Appellant must show that counsel's performance fell below an objective standard of reasonableness. Id. In this regard, a properly licensed attorney is presumed to be competent; thus, judicial scrutiny of an attorney's performance must be highly deferential.Strickland, supra at 689; State v. Seiber (1990), 56 Ohio St.3d 4,11. Counsel's strategic decisions and trial tactics will not support a claim of ineffective assistance. State v. Clayton
(1980), 62 Ohio St.2d 45, 48-49.
To show that appellant has been prejudiced by counsel's deficient performance, appellant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
Appellant contends that he was denied effective assistance of counsel because his trial counsel failed to retain an accident reconstruction expert witness. We find nothing in the record, however, to suggest that counsel's failure to call an accident reconstruction expert was anything other than a reasonable, tactical decision.
Moreover, even if defense counsel's performance were deficient, we are not convinced that counsel's failure to call an accident reconstruction expert was prejudicial to appellant. As discussed at length in our analysis of appellant's assignments of error two, four and five, there is substantial, credible evidence in the record to establish appellant's guilt. Appellant has not produced any evidence to establish a reasonable probability that the outcome of the trial would have been different if defense counsel had called an accident reconstruction expert to testify at trial.
Appellant also contends that he was denied effective assistance of counsel because his trial counsel failed to call two witnesses who allegedly would have provided exculpatory testimony regarding a car other than appellant's speeding on I-90 at the time of the accident. Appellant has presented no evidence, however, that he was prejudiced by trial counsel's failure to call such witnesses. Rather, appellant merely speculates that the outcome of the trial would have been different if the jury had heard this allegedly exculpatory testimony.
Accordingly, appellant has failed to show that he was denied effective assistance of counsel. Appellant's third assignment of error is overruled.
 IV. EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT THE AGGRAVATED VEHICULAR ASSAULT CONVICTIONS.
In his fourth assignment of error, appellant challenges the sufficiency of the evidence to support his conviction.
A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins
(1997), 78 Ohio St.3d 380, 190. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2903.08 defines the offense of aggravated vehicular assault:
 (A) No person, while operating or participating in the operation of a motor vehicle * * * shall recklessly cause serious physical harm to another person * * *
Appellant argues that the state failed to prove that he committed aggravated vehicular assault by acting recklessly. Appellant contends that the state did not establish that his alcohol consumption was a cause of the accident nor that he was driving at an excessive rate of speed and, therefore, the mere fact that he hit the rear of Ms. Assad's car does not establish recklessness. This argument has no merit.
R.C. 2901.22(C) provides that:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. * * *
Evidence that a defendant was driving under the influence of alcohol is sufficient to support a finding of recklessness. Statev. Runnels (1989), 56 Ohio App.3d 120, 126. Here, the state presented sufficient evidence that appellant was driving under the influence of alcohol when the accident happened. Matthew Matlak testified that when he pulled appellant out of his car, he detected a strong odor of alcohol on appellant's breath and his eyes were glassy. Sergeant Stillman testified that when he went into the ambulance at the scene to check on appellant's condition, he immediately detected the odor of alcohol on appellant's breath and observed that his eyes were glassy and his speech was slurred. State's Exhibit 35, a record of the blood alcohol test administered to appellant at Fairview Hospital, indicate that at 7:42 p.m. on August 2, 1997, appellant had a blood alcohol level of .171, 1.7 times the legal limit. Viewing this evidence in a light most favorable to the prosecution, the jury could have found, beyond a reasonable doubt, that appellant acted recklessly by operating his vehicle while under the influence of alcohol.
Appellant also contends that the injuries sustained by Fahima and Awatef Assad did not constitute "serious physical harm" as defined by R.C. 2901.01(5)
"Serious physical harm to persons" means any of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
(b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
The record reflects that after the accident, Fahima and Awatef Assad were transported by ambulance to the emergency room at Lakewood Hospital. Fahima Assad received fifty stitches to her head and treatment for lacerations and bruises to her leg, feet, back and neck. Awatef Assad testified that she broke her nose in the accident and received stitches to her lips. She also testified that she now has a herniated disc in her neck and back as a result of the accident. Fahima remained in the hospital for two days after the accident; Awatef spent one night in the hospital.
This testimony, coupled with state's exhibits 1 through 7 and 13, color photographs of the victims taken one week after the accident, and state's exhibits 29 and 37, the medical records regarding the treatment rendered to Fahima and Awatef Assad at Lakewood Hospital after the accident, provided substantial evidence upon which the jury could have reasonably concluded that Fahima and Awatef suffered "serious physical harm" within the meaning of R.C. 2901.01(5)
We hold, therefore, that the state met its burden of production regarding each element of the crime of aggravated vehicular assault and, accordingly, there was sufficient evidence to support appellant's conviction.
Appellant's fourth assignment of error is overruled.
 V. AGGRAVATED VEHICULAR ASSAULT CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his fifth assignment of error, appellant contends that his conviction was against the manifest weight of the evidence.
When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing Statev. Martin (1983), 20 Ohio App.3d 172, 175.
After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction must be reversed. Rather, the record reveals that there is substantial evidence from which the jury could have concluded, beyond a reasonable doubt, that, while operating his motor vehicle under the influence of alcohol, appellant recklessly caused serious physical harm to Fahima and Awatef Assad.
David Mustin testified that he observed a dark-colored car going eighty-five to ninety miles per hour pass him on his left only thirty to sixty seconds before the crash. Awatef Assad testified that she was traveling at the lawful speed in the right-hand lane when her car was rear-ended; she identified appellant's car as the car that hit her. Furthermore, Officer Flowers testified that appellant's written statement regarding how the accident happened is inconsistent with his observations of the accident scene and his drawing. Indeed, Officer Flowers testified that the statement appellant made to him in the emergency room at Fairview Hospital — that appellant hit the Toyota Corolla when he tried to go around it — was consistent with Flowers' observations of the skid marks at the scene and his diagram.
Appellant contends, however, that the jury lost its way because the physical evidence of the accident scene is more consistent with his written statement regarding how the accident happened than with the state's version of the accident. In addition, appellant challenges the credibility of Awatef Assad, who testified that she has filed a civil lawsuit regarding the accident. The jury heard the testimony, reviewed the exhibits and was aware of any inconsistencies between the testimony and exhibits. The jury was also aware of any personal interest Ms. Assad might have had in the trial, given her testimony that she has filed a lawsuit regarding the accident. The weight to be given the evidence and the credibility of the witnesses are primarily matters for the trier of fact. State v. DeHass (1976),10 Ohio St.2d 230, paragraph one of the syllabus.
We have reviewed the entire record of proceedings before the trial court. Upon thorough consideration of the law and the evidence presented at trial, we find that there was substantial, competent, credible evidence upon which the jury could find appellant guilty of aggravated vehicular assault, while driving under the influence of alcohol, in violation of R.C. 2903.08.
Appellant's fifth assignment of error is overruled.
 VI. TRIAL COURT ERRED IN SENTENCING APPELLANT UNDER REVISED CODE SECTIONS 2929.11 AND 2929.14.
In his sixth assignment of error, appellant contends that the trial court committed numerous errors in imposing its sentence. We agree, modify appellant's sentence to correct the errors and, as modified, affirm.
The trial court sentenced appellant to twelve months incarceration on count one and eighteen months incarceration on count two, with the sentences to run consecutively. The trial court also ordered appellant to pay the victims' medical bills, court costs and the cost of his court-appointed lawyer. At the sentencing hearing, the trial court also ordered appellant to pay a $2000 fine on each count, although the journal entry states that the fine imposed is $5000.
Pursuant to R.C. 2903.08(2), a first-time offense of aggravated vehicular assault is a felony of the fourth degree. R.C.2929.14(A)(4) sets forth the sentencing guidelines applicable to fourth degree felonies, allowing prison terms of six to eighteen months.
Pursuant to R.C. 2929.14(B), if a defendant has not previously served a prison term, the trial court must impose the minimum sentence unless it specifies on the record that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender:
 [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
In imposing a maximum sentence, the trial court must follow R.C. 2929.14(C), which states:
 The court imposing a sentence upon an offender for a felony may impose the longest term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *.
Moreover, pursuant to R.C. 2929.19(B)(2)(e), where a trial court imposes a sentence for two offenses arising out of a single incident and imposes the maximum prison term allowed, it must "make a finding that gives its reasons for selecting the [maximum] sentence."
In State v. Edmonson (1999), 86 Ohio St.3d 324, the Ohio Supreme Court recently addressed the principles governing minimum and maximum sentences. With respect to minimum terms, the Supreme Court stated, "[U]nless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." Id. at 326.
Here, although appellant had not previously served a prison term, the trial court did not impose the minimum sentence of six months incarceration. It did not, however, as required by R.C.2929.14(B) and Edmonson, make a finding on the record that a six-month minimum sentence would demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by appellant.
Moreover, as noted above, R.C. 2929.19(B)(2)(e) requires the trial court to make a finding giving its reasons for selecting a sentence "if the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree Appellant was sentenced for two offenses (count one, aggravated vehicular assault of Fahima Assad; count two, aggravated vehicular assault of Awatef Assad) arising out of the accident. Both offenses are felonies of the fourth degree. The maximum prison term for a felony of the fourth degree is eighteen months. R.C. 2929.14(A)(4). Here, the trial court imposed a prison term for the two offenses totaling thirty months.
A review of the record indicates that before imposing sentence, the trial court stated: "The court makes a finding that this was a serious violation and that there was serious injury imposed upon two innocent victims." This finding is insufficient to comply with either R.C. 2929.19(B)(2)(e) or R.C. 2929.14(C).
The trial court also erred in imposing consecutive sentences without following the statutory mandates for imposing consecutive sentences set forth in R.C. 2929.14(E).
R.C. 2929.14(E)(4) provides in pertinent part:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Thus, pursuant to R.C. 2929.14(E)(4), the trial court may impose consecutive prison terms for convictions of multiple offenses upon the making of certain findings enumerated in the statute. Moreover, under R.C. 2929.19(B)(2)(c), if the trial court imposes consecutive sentences, it must make a finding on the record that gives its reasons for imposing consecutive sentences.
Here, the trial court did not make the necessary findings on the record to satisfy the criteria imposed by R.C. 2929.14(E)(4). Indeed, the trial court gave no reason whatsoever for imposing consecutive sentences in this case.
Moreover, we find that the trial court erred in imposing consecutive sentences. Pursuant to R.C. 2929.14(E)(4), multiple prison terms are appropriate only if the trial court finds that: 1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; 2) the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and 3) the offender committed the multiple offenses while awaiting trial or sentence, or on probation or other post-release control for another offense; or the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the defendant's conduct; or the offender has a history of recidivism and multiple terms are necessary to protect the public from future harm. Appellant does not meet these statutory conditions.
There is nothing in the record to indicate that consecutive sentences are necessary to protect the public or punish appellant. Moreover, the consecutive sentences imposed in this case are disproportionate to the seriousness of appellant's conduct and the danger he poses to the public. Although the injuries sustained by the victims in this case were serious, they were not so exceptional or severe that they warranted increased punishment. Accordingly, appellant's sentences should have been ordered to be served concurrently.
Appellant also argues that the trial court was not authorized to order him to pay the medical expenses incurred by the Assads. We disagree.
R.C. 2929.18(A) provides, in pertinent part:
 The court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section * * *. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, * * *:
 (1) Restitution by the offender to the victim of the offender's crime in an amount based on the victim's economic loss.
Thus, under R.C. 2929.18,[1] the trial court was authorized to order appellant to pay the Assads' medical expenses.
Appellant argues, however, that pursuant to R.C. 2929.19(B)(6), before imposing any financial sanction, the trial court was required to consider appellant's ability to pay the sanction. R.C. 2929.19(B)(6) provides:
 Before imposing a financial sanction under section 2929.18 of the Revised Code, the court shall consider the offender's ability to pay and other matters under section 2929.181 of the Revised Code.[2]
R.C. 2929.18(E) provides that "a court that imposes a financial sanction upon an offender may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it."
R.C. 120.33(A)(4) specifies when a defendant with court-appointed counsel may be required to pay for the cost of his or her defense:
 The fees and expenses approved by the court shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or may reasonably be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay.
A review of the record indicates that although the trial court ordered appellant to pay the Assads' medical expenses, imposed a $2000 fine on each count and ordered appellant to pay the cost of his court-appointed attorney, the trial court did not comply with any of the above-stated statutory requirements. The trial court did not hold a hearing to determine whether appellant was able to pay the financial sanctions imposed by the court nor did it consider, even cursorily, whether appellant has the means to pay any of the sanctions imposed by the court. In light of the trial court's finding, for purposes of appointing appellate counsel, that appellant is indigent, however, we conclude that it is apparent that appellant does not have the means to pay the financial sanctions imposed by the court.
Appellant's sixth assignment of error is sustained. Because we do not find the statutory factors for imposing a maximum sentence identified in R.C. 2929.14(C) to be present in this case, we modify appellant's prison sentence to twelve months incarceration on each count, the sentences to be served concurrently, and vacate the financial sanctions imposed by the trial court. As modified, we affirm the sentence.
Conviction affirmed; sentence modified and, as modified, affirmed.
It is, therefore, ordered that appellant and appellee equally share the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE
 LEO M. SPELLACY, J. and ANNE L. KILBANE, J., CONCUR.
[1] Under former R.C. 2929.11(E), the section cited by appellant, medical expenses could not be part of a restitution order because they did not constitute property damage. R.C.2929.18, the current restitution statute, effective October 17, 1996, allows for reimbursement of medical expenses as part of a restitution order.
[2] R.C. 2929.181, which would have required courts to hold a hearing in order to determine an offender's ability to pay a fine, was initially enacted by S.B. No. 2 and was set to take effect on July 1, 1996. However, Am.Sub.S.B. No. 269, which was subsequently enacted on June 28, 1996, repealed R.C. 2929.181
effective July 1, 1996 and, therefore, R.C. 2929.181 "never became governing law within the state of Ohio." State v. Frede
(Nov. 24, 1997), Clermont App. No. CA97-02-011, unreported.